UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------X

In re:                                                   :
                                                         :
AMPAL-AMERICAN ISRAEL CORP.,      :          Chapter 7
                                                         :          Case No. 12-13689 (SMB)
                    Debtor.                         :
                                                         :
----------------------------------------------------------X
ALEX SPIZZ, as Chapter 7 Trustee of      :
AMPAL-AMERICAN ISRAEL CORP.,      :
                                                         :
                    Plaintiff,                       :          Adv. P. No. 14-02104 (SMB)
                                                         :
          – against –                              :
                                                         :
GOLDFARB SELIGMAN & CO.,          :
                                                         :
                    Defendant.                    :
----------------------------------------------------------X

## POST-TRIAL FINDINGS OF FACT AND CONCLUSIONS OF LAW

**A P P E A R A N C E S**:

TARTER KRINSKY & DROGIN LLP
*Attorneys for Alex Spizz,*
  *Chapter 7 Trustee*
1350 Broadway
New York, New York 10018

          Alex Spizz, Esq.
          Arthur Goldstein, Esq.
          Jill Makower, Esq.
                    Of Counsel

SMITH, GAMBRELL & RUSSELL, LLP
*Attorneys for Goldfarb Seligman & Co.*
1301 Avenue of the Americas, 21st Floor
New York, New York 10019

          John G. McCarthy, Esq.
                    Of Counsel

**STUART M. BERNSTEIN**
**United States Bankruptcy Judge:**

Alex Spizz, the chapter 7 trustee (the "Trustee") for Ampal-American Israel Corp. ("Ampal"), filed this adversary proceeding to avoid and recover a single prepetition transfer made by Ampal in Israel to the Israeli law firm Goldfarb Seligman & Co. ("Goldfarb") as a preference pursuant to sections 547 and 550 of the Bankruptcy Code. The Court conducted a trial on April 13, 2016.  The sole issue is whether the presumption against extraterritoriality prevents the Trustee from avoiding the transfer.

The Court concludes that Congress did not intend the avoidance provisions of the Bankruptcy Code to apply extraterritorially, and the transfer at issue occurred in Israel. Accordingly, the Court awards judgment to Goldfarb dismissing the action.

## FINDINGS OF FACT

Ampal is a corporation organized under New York law that served as a holding company owning direct and indirect interests in subsidiaries primarily located in Israel. (*Joint Pre-Trial Order*, entered Feb. 2, 2016 ("*JPTO*") at 3, ¶ 3 & 4, ¶ 6 (ECF Doc. # 17)[1].)  At all relevant times, Ampal's senior management worked out of offices located in Herzliya, Israel, where its books and records were also maintained.  (*Id.* at 4, ¶¶ 7, 8.) Goldfarb is a law firm organized under the laws of Israel with its only office in Tel Aviv, Israel.  (*Id.* at 3, ¶ 1.)

Prior to and for some time after August 29, 2012 (the "Petition Date"), Ampal's Class A Stock was publicly traded on the NASDAQ Capital Market Exchange in the United States and was also listed on the Tel Aviv Stock Exchange (the "TASE").  (*Id.* at 4, ¶ 4.)  In addition, Ampal had issued three series of debentures, all of which were

---

[1]     "ECF Doc # ___" refers to documents filed on the docket of this adversary proceeding.

2

publicly traded solely on the TASE.  Consequently, Ampal was subject to on-going reporting obligations under the Israeli Securities Law – 1968 and the regulations promulgated thereunder.  (*Id.* at 4, ¶ 5.)  Ampal's senior management in Israel retained Goldfarb to provide legal services to Ampal in connection with various corporate and securities matters in Israel and compliance with Israeli securities laws from prior to 2010 through the Petition Date.  (*Id.* at 5, ¶ 19.)  Erez Altit, a partner in Goldfarb, (Transcript of Apr. 13, 2016 Trial ("Tr.") at 8:20-22)), served as the relationship partner for Ampal during the relevant period.  (Tr. at 19:19-21.)

In the course of the work for Ampal, Goldfarb issued a series of invoices.  (*See* Defendant's Exhibits ("DX") A-E.)  On or about June 11, 2012, Ampal instructed Bank Hapoalim located in Tel Aviv, Israel to transfer 344,322.64 New Israeli Shekels ("NIS") from its account to Goldfarb's account with Bank Hapoalim in Tel Aviv, Israel (the "Transfer").  (*JPTO* at 4, ¶ 11.)  The value of the Transfer in U.S. dollars equaled $89,110.41.  (Plaintiff's Exhibit ("PX") 1.)  Ampal did not specify how to apply the Transfer, and Goldfarb applied it to outstanding legal bills totaling NIS 350,509.89, leaving a balance due of NIS 6,187.25.  (*JPTO* at 4-5, ¶ 12.)  The Transfer did not fully satisfy Ampal's debt because Goldfarb filed a general unsecured claim in the amount of US$ 59,691.72 for unpaid prepetition legal fees.  (*Id.* at 5, ¶ 18.)[2]

Ampal commenced a chapter 11 case in this Court within ninety days of the Transfer.  (*Id.* at 3, ¶ 2.)  By order dated May 2, 2013, the Court converted the chapter 11 case to a case under chapter 7 of the Bankruptcy Code, (*id.* at 4, ¶ 9), and on May 20,

---

[2]    Goldfarb also filed an administrative claim for post-petition services, but that claim was expunged by order dated May 11, 2016.  (ECF Case No. 12-13689 Doc. # 715.)

2013, the Trustee was elected chapter 7 trustee. (*Id.* at 4, ¶ 10.)  The Trustee filed his complaint against Goldfarb on Aug. 27, 2014[3] asserting two claims: (1) avoidance and recovery of the Transfer pursuant to 11 U.S.C. §§ 547 and 550 as a preferential transfer, and (2) disallowance of Goldfarb's unsecured claim pursuant to 11 U.S.C. § 502(d).

Goldfarb answered the complaint on Oct. 15, 2014.[4]  He asserted twelve defenses but the vast majority have been withdrawn[5] leaving just two.  First, Goldfarb argued that the Trustee's preference claim was barred by the presumption against extraterritoriality.  Second, Goldfarb contended that it provided new value to Ampal after the Transfer.  *See* 11 U.S.C. § 547(c)(4).  As to the latter, the parties have stipulated that Goldfarb provided new value to Ampal within the meaning of section 547(c)(4) of the Bankruptcy Code in the amount of NIS 103,625.64.  (*JPTO* at 7, ¶ 30.)  As a result, the amount of the Transfer subject to the Trustee's preference claim is NIS 240,697 (NIS 344,322.64 (original Transfer amount) less NIS 103,625.64 (new value)).

A trial was held on Apr. 13, 2016, and the parties submitted post trial briefs.[6]  The parties have expressly consented to this Court's authority to enter a final judgment. (*JPTO, Pt. II,* at 3.)

---

[3]      *See* ECF Doc. # 1.

[4]      *See* ECF Doc. # 4.

[5]      *See* JTPO at 2 n.1 *and Defendant's Proposed Findings of Fact and Conclusions of Law*, dated May 16, 2016 at 1 n.1 ("*Goldfarb Brief*") (ECF Doc. # 20).

[6]      *Plaintiff's Proposed Findings of Fact and Conclusions of Law*, dated May 3, 2016 (not filed on ECF) ("*Trustee Brief*"); *Goldfarb Brief*; *Plaintiff's Memorandum of Law in Reply to Defendant's Proposed Conclusions of Law Regarding Defense of Presumption Against Extraterritoriality,* dated May 31, 2016 ("*Trustee Reply*") (ECF Doc. # 22); and *Plaintiff's Reply to Defendant's Proposed Findings of Fact,* dated May 31, 2016 (ECF Doc. # 21).  Parties also sent letters after completion of post-trial briefs.

## CONCLUSIONS OF LAW

Section 547(b) of the Bankruptcy Code provides that the trustee may avoid any

transfer of an interest of the debtor in property—

> (1) to or for the benefit of a creditor;
>
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
>
> (3) made while the debtor was insolvent;
>
> (4) made—
>
>> (A) on or within 90 days before the [Petition Date]
>>
>> . . . .
>
> (5) that enables such creditor to receive more than such creditor would receive if—
>
>> (A) the case were a case under chapter 7 of this title;
>>
>> (B) the transfer had not been made; and
>>
>> (C) such creditor received payment of such debt to the extent provided by provisions of this title.

11 U.S.C. § 547(b).  If the trustee avoids the transfer, he may recover the transfer or its

value from, *inter alia*, the initial transferee.  11 U.S.C. § 550(a)(1).  Goldfarb does not

dispute that the Trustee proved a *prima facie* case for avoidance.  (*Tr.* at 66:25-67:8.)

As noted, the only issue is whether the presumption against extraterritoriality bars the

Trustee from avoiding the Transfer.

## A.    The Presumption Against Extraterritoriality

The "presumption against extraterritoriality" is a "longstanding principle of

American law that legislation of Congress, unless a contrary intent appears, is meant to

apply only within the territorial jurisdiction of the United States." *EEOC v. Arabian*

*Am. Oil Co.*, 499 U.S. 244, 248 (1991) ("*Aramco*") (internal quotation marks and

---

(*See* ECF Doc. Nos. 24 & 25.)

citation omitted); *accord RJR Nabisco, Inc. v. European Cmty.*, 136 S. Ct. 2090, 2100 (2016) ("*Nabisco*"); *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 248 (2010) ("*Morrison*").  The presumption "serves to protect against unintended clashes between our laws and those of other nations which could result in international discord." *Aramco*, 499 U.S. at 248.

In *Morrison*, the Supreme Court outlined a two-step approach to determine whether the presumption forecloses the claim.  "At the first step, we ask whether the presumption against extraterritoriality has been rebutted—that is, whether the statute gives a clear, affirmative indication that it applies extraterritorially." *Nabisco*, 136 S. Ct. at 2101; *accord Morrison*, 561 U.S. at 255 ("When a statute gives no clear indication of an extraterritorial application, it has none.").  The first step does not impose a "clear statement rule," because even absent a "clear statement," the context of the statute can be consulted to give the most faithful reading. *Morrison*, 561 U.S. at 265.  If the first step yields the conclusion that the statute applies extraterritorially, the inquiry ends.

If it does not, the court must turn to the second step to determine if the litigation involves an extraterritorial application of the statute:

> If the statute is not extraterritorial, then at the second step we determine whether the case involves a domestic application of the statute, and we do this by looking to the statute's "focus."  If the conduct relevant to the statute's focus occurred in the United States, then the case involves a permissible domestic application even if other conduct occurred abroad; but if the conduct relevant to the focus occurred in a foreign country, then the case involves an impermissible extraterritorial application regardless of any other conduct that occurred in U.S. territory.

*Nabisco*, 136 S. Ct. at 2101; *accord Morrison*, 561 U.S. at 266-67 (court must look to the "'focus' of congressional concern," *i.e.*, the "objects of the statute's solicitude").  Courts

however, must be wary in concluding too quickly that some minimal domestic conduct

means the statute is being applied domestically:

> [I]t is a rare case of prohibited extraterritorial application that lacks *all*
> contact with the territory of the United States.  But the presumption
> against extraterritorial application would be a craven watchdog indeed if it
> retreated to its kennel whenever *some* domestic activity is involved in the
> case.

*Morrison*, 561 U.S. at 266 (emphasis in original).

The Supreme Court expressly rejected the "conduct and effects" tests that the

Second Circuit had applied in determining whether the presumption had been rebutted.

The "effects" test asked "whether the wrongful conduct had a substantial effect in the

United States or upon United States citizens," and the "conduct" test asked "whether the

wrongful conduct occurred in the United States."  *Id.* at 257 (quoting *SEC v. Berger*, 322

F.3d 187, 192-93 (2d Cir. 2003)).  Justice Scalia described these standards as "complex

in formulation and unpredictable in application."  *Id.* at 255.

## B.   Extraterritoriality and the Bankruptcy Code - Pre-*Morrison*

Several pre-*Morrison* decisions considered the extraterritoriality of the

Bankruptcy Code's avoidance provisions but two have proved most influential.

### 1.   *Maxwell Commc'n Corp. plc v. Societe Gen. plc* (*In re Maxwell Commc'n Corp. plc*), 186 B.R. 807 (S.D.N.Y. 1995) ("*Maxwell I*"), aff'd, 93 F.3d 1036 (2d Cir. 1996) ("*Maxwell II*")

In *Maxwell I*, the debtor ("MCC") operated as a holding company for an

international media conglomerate based out of England.  While MCC was

headquartered in England and incurred most of its debts there, most of its assets were

in the United States.  *Maxwell II*, 93 F.3d at 1040.  On December 16, 1991, MCC filed a

chapter 11 petition in the Southern District of New York, and on next day, petitioned the

7

High Court of Justice in London for an administration under the Insolvency Act 1986.
*Maxwell I*, 186 B.R. at 813. Prior to the bankruptcy proceedings, it had sold significant
portions of its U.S. assets, and within ninety days of the U.S. petition date, had
transferred a portion of the sale proceeds to Barclays Bank plc, National Westminster
Bank plc and Societe General, all in satisfaction of pre-petition credit facilities incurred
abroad. *Id.* After its chapter 11 filing, MCC sought to avoid those transfers as
preferences under section 547 of the Bankruptcy Code. *Id.* at 814. One issue before the
*Maxwell I* Court was whether the presumption against extraterritoriality barred
avoidance of MCC's pre-petition transfers to the foreign banks.

After applying a "component events" analysis and concluding that the transfers
occurred abroad, *id.* at 816-18, the District Court turned to whether Congress
nevertheless intended section 547 to apply extraterritorially. The District Court noted at
the outset that "nothing in the language or legislative history of § 547 expresse[d]
Congress' intent to apply the statute to foreign transfers." *Id.* at 819; *accord Barclay v.
Swiss Fin. Corp. Ltd.* (*In re Midland Euro Exch. Inc.*), 347 B.R. 708, 717-18 (Bankr. C.D.
Cal. 2006). The District Court also rejected MCC's argument that the comprehensive
nature of the Bankruptcy Code indicated Congress' intent to apply U.S. avoidance laws
internationally. MCC had argued that property of the estate under Bankruptcy Code §
541(a) included property wherever located and by whomever held that the trustee
recovered under Bankruptcy Code § 550, *see* 11 U.S.C. § 541(a)(3), and any interest in
property that the estate acquired after the commencement of the case. *See* 11 U.S.C. §
541(a)(7). *Maxwell I*, 186 B.R. at 819-20. The District Court observed that a transfer
subject to avoidance as a preference did not become property of the estate under 11

8

U.S.C. § 541(a)(3) until it was recovered.  *Maxwell I*, 186 B.R. at 820 (citing *FDIC v. Hirsch* (*In re Colonial Realty Co.*), 980 F.2d 125, 131 (2d Cir. 1992) ("*Colonial*")).  As a result, the *Maxwell I* Court held that "§ 541 does not indicate [that] Congress intended § 547 to govern extraterritorial transfers."  186 B.R. at 820; *cf. Midland*, 347 B.R. at 718 (neither the plain language of the Bankruptcy Code's fraudulent transfer avoidance provision—section 548—nor its reading in conjunction with other code provisions establish that Congress intended to apply section 548 extraterritorially).

Lastly, the District Court concluded that a finding that the presumption against extraterritoriality had not been rebutted would not undermine the Bankruptcy Code's policies of equality of distribution among similarly-situated creditors and discouraging the dismemberment of financially distressed debtors.  First, not all pre-bankruptcy transfers are avoidable as § 547(c) contains a number of defenses.  Second, the English and U.S. creditors were not similarly situated.  Third, the transfers might still be recoverable under English law.  *Maxwell I*, 186 B.R. at 820.

The Second Circuit affirmed, but on the ground that international comity required deference to the courts and laws of England and precluded the application of the avoidance and recovery provisions to the transfers at issue.  *Maxwell II*, 93 F.3d at 1054-55.

### 2.    *French v. Liebmann* (*In re French*), 440 F.3d 145 (4th Cir.), *cert. denied*, 549 U.S. 815 (2006)

The United States Court of Appeals for the Fourth Circuit reached the opposite conclusion in *French*.  There, the debtor gifted her Bahamian house to her two children, both U.S. residents.  The children did not immediately record the transfer, and shortly

after they finally did, an involuntary chapter 7 petition was filed against the debtor by

her creditors. *French*, 440 F.3d at 148. After the bankruptcy court ordered relief, the

chapter 7 trustee filed an adversary proceeding against the children to avoid the transfer

of the property as a constructive fraudulent transfer under 11 U.S.C. § 548(a)(1)(B). *Id.*

The parties agreed that the trustee had established a *prima facie* case to avoid the

transfer, but the children nevertheless moved to dismiss arguing, *inter alia*, that U.S.

fraudulent transfer laws should not apply to the Bahamian transfer. *Id.* at 149.

The *French* Court determined that it was unnecessary to resolve whether the

transfer was extraterritorial because Congress intended international application of U.S.

fraudulent transfer law, adopting the argument rejected by the *Maxwell I* Court. The

Fourth Circuit observed that pursuant to section 541 of the Bankruptcy Code, "all of a

debtor's property, whether domestic or foreign, [was] 'property of the estate' subject to

the bankruptcy court's *in rem* jurisdiction." *Id.* at 151. In turn, section 548 "allow[ed]

the avoidance of certain transfers of such 'interest[s] of the debtor in property.'" *Id.*

(quoting 11 U.S.C. § 548(a)(1)). Accordingly, the Fourth Circuit explained:

> By incorporating the language of § 541 to define what property a trustee
> may recover under his avoidance powers, § 548 plainly allows a trustee to
> avoid any transfer of property that *would have been* "property of the
> estate" prior to the transfer in question—as defined by § 541—even if that
> property is not "property of the estate" *now. . . .* Through this
> incorporation, Congress made manifest its intent that § 548 apply to all
> property that, absent a prepetition transfer, would have been property of
> the estate, wherever that property is located.

*Id.* at 151-52 (emphases in original; footnote omitted). *Accord Weisfelner v. Blavatnik*

(*In re Lyondell Chem. Co.*), 543 B.R. 127, 151-52 (Bankr. S.D.N.Y. 2016) ("*Lyondell*")

(agreeing with *French* that Congress intended extraterritorial application of section 548

of the Bankruptcy Code); Jay Lawrence Westbrook, *Avoidance of Pre-Bankruptcy*

*Transactions in Multinational Bankruptcy Cases*, 42 TEX. INT'L L.J. 899, 907 (2007)

("Westbrook") (same); *contra Midland*, 347 B.R. at 718 ("*In re French* totally ignores §

541(a)(3) and uses an unclear and convoluted method to reach its conclusion.").  The

Fourth Circuit also noted the split in the law on the question of whether "property of the

estate" included fraudulently transferred property, but did not have to take a side given

its conclusion that § 548 extended to the Bahamian property.  *French*, 440 F.3d at 151-

52 n. 2.

### 3.    *Begier v. Internal Revenue Service*, **496 U.S. 53 (1990)**

The *French* Court cited *Begier v. IRS* in support of its conclusion that Congress

intended Bankruptcy Code § 548 to apply extraterritorially.  *Begier* did not deal with the

issue of extraterritoriality.  There, the chapter 7 trustee sued to avoid and recover a

preferential transfer made by the debtor within ninety days of the petition date to satisfy

a debt owing for trust fund taxes.  The issue before the Supreme Court was whether the

transferred property was property of the debtor within the meaning of Bankruptcy Code

§ 541 at the time of the transfer.

The Supreme Court began by reminding that "[e]quality of distribution among

creditors is a central policy of the Bankruptcy Code," and 547(b) furthered that policy by

allowing the trustee to avoid and recover certain preferential payments that favored

transferee creditors over other creditors.  *Begier*, 486 U.S. at 58.  The Supreme Court

then added an important qualification:  "if the debtor transfers property that would not

have been available for distribution to his creditors in a bankruptcy proceeding, the

policy behind the avoidance power is not implicated.  The reach of § 547(b)'s avoidance

power is therefore limited to transfers of 'property of the debtor.'"  *Id.*

This led the Supreme Court to consider the relationship between Bankruptcy Code § 541(a), which defines "property of the estate," and Bankruptcy Code § 547(b) which allows the avoidance of pre-petition transfers of "property of the debtor." Harmonizing the two provisions, the Supreme Court stated:

> The Bankruptcy Code does not define "property of the debtor." Because the purpose of the avoidance provision is to preserve the property includable within the bankruptcy estate – the property available for distribution to creditors – *"property of the debtor" subject to the preferential transfer provision is best understood as that property that would have been part of the estate had it not been transferred before the commencement of bankruptcy proceedings.* For guidance, then, we must turn to § 541, which delineates the scope of "property of the estate" and serves as the postpetition analog to § 547(b)'s "property of the debtor."

*Id.* at 58-59 (emphasis added); *accord Cullen Ctr. Bank & Trust v. Hensley* (*In re Criswell*), 102 F.3d 1411, 1416 (5th Cir. 1997)("[W]e agree with the district court that it makes most sense to read the term 'interest of the debtor in property' under § 547(b) as here being synonymous with the term 'property of the estate' under § 541."); *Glinka v. Bank of Vermont* (*In re Kelton Motors, Inc.*), 97 F.3d 22, 25 (2d Cir. 1996) ("[T]he trustee may only seek to reach those legal or equitable interests that the debtor would have held at the time of the petition but for the debtor's transfer of those interests."). The Supreme Court added that recent changes in the terminology in § 547(b) confirmed the view that § 541 guided the interpretation of property of the debtor as used in § 547(b):

> Section 547(b) thus now mirrors § 541's definition of "property of the estate" as certain "interests of the debtor in property." 11 U.S.C. § 541(a)(1) (1988 ed.). . . . We therefore read both the older language ("property of the debtor") and the current language ("an interest of the debtor in property") as coextensive with "interests of the debtor in property" as that term is used in 11 U.S.C. § 541(a)(1) (1988 ed.).

*Begier*, 496 U.S. at 59 n. 3.

The Supreme Court concluded that the trustee could not avoid the transfers "[b]ecause the debtor does not own an equitable interest in property he holds in trust for another, that interest is not 'property of the estate.'  Nor is such an equitable interest 'property of the debtor' for purposes of § 547(b)."  *Begier*, 496 U.S. at 59.

**C.      Extraterritoriality and the Bankruptcy Code – Post-*Morrison***

**1.      *Picard v. Bureau of Labor Ins.* (*In re BLMIS*), 480 B.R. 501 (Bankr. S.D.N.Y. 2012)**

After *Morrison*, the issue of whether the Bankruptcy Code's avoidance and recovery provisions reached foreign transfers was first addressed in *Picard v. Bureau of Labor Ins.* (*In re BLMIS*), 480 B.R. 501 (Bankr. S.D.N.Y. 2012) ("*BLI*").  BLI, a Taiwanese entity, invested in Fairfield Sentry, a large feeder fund organized in the British Virgin Islands that invested substantially all of its assets in BLMIS, [7] the vehicle through which Madoff operated his Ponzi scheme.  BLI submitted a redemption request to Fairfield Sentry and provided wire instructions.  Pursuant to those instructions, Fairfield Sentry sent $42,123,406 from a Dublin bank account to a New York JP Morgan Account specified by BLI, and the redemption payment was then sent on to BLI's JP Morgan account in London.  *Id.* at 509.  Following his appointment, the BLMIS trustee sought to recover the subsequent transfers made by Fairfield Sentry to BLI pursuant to section 550 of the Bankruptcy Code.  BLI moved to dismiss arguing, *inter alia*, that the trustee's claims were barred by the presumption against extraterritoriality.

Denying the motion, the Bankruptcy Court engaged in the two-step analysis required by *Morrison*.  Beginning with the second step, Judge Lifland held that the

---

[7]      "BLMIS" refers to Bernard L. Madoff Investment Securities, LLC.

"focus" of "the avoidance and recovery sections [of the Bankruptcy Code] is on the initial transfers that deplete the bankruptcy estate and not on the recipient of the transfers or the subsequent transfers." *Id.* at 524; *accord Begier*, 496 U.S. at 58 (stating that "the purpose of the [preference] avoidance provision is to preserve the property includable within the bankruptcy estate – the property available for distribution to creditors"); *French*, 440 F.3d at 154 ("[T]he Code's avoidance provisions protect creditors by preserving the bankruptcy estate against illegitimate depletions."). The depletion of the BLMIS estate occurred domestically because the transfers at issue originated from BLMIS' JPMorgan account in New York and went to Fairfield Sentry's New York account at HSBC. *BLI*, 480 B.R. at 525. "As the focus of Section 550 occurred domestically, the fact that BLI received BLMIS's fraudulently transferred property in a foreign country does not make the Trustee's application of this section extraterritorial." *Id.*[8]

While this conclusion was dispositive, Judge Lifland also addressed the first *Morrison* step, and concluded that "Congress demonstrated its clear intent for the extraterritorial application of Section 550 through interweaving terminology and cross-references to relevant Code provisions." *Id.* at 527. Specifically, the term "property of the estate" includes property "wherever located, and by whomever held" that was property of the debtor at the commencement of the case. 11 U.S.C. § 541(a)(1). Thus, "property of the estate" extends to property located worldwide. *Id.*; *accord* 28 U.S.C. §

---

[8]    The Court added that pragmatic considerations supported its conclusion. "In particular, if the avoidance and recovery provisions ceased to be effective at the borders of the United States, a debtor could end run the Code by 'simply arrang[ing] to have the transfer made overseas,' thereby shielding them from United States law and recovery by creditors." *BLI*, 480 B.R. at 525 (quoting *Maxwell I*, 186 B.R. at 816).

1334(e)(1) (granting the District Court exclusive jurisdiction "of all the property, wherever located, of the debtor as of the commencement of [the bankruptcy] case, and of property of the estate").

The avoidance provisions of the Bankruptcy Code grant a trustee the power to avoid certain prepetition transfers "of an interest of the debtor in property," *e.g.*, 11 U.S.C. § 548(a)(1), the same term used in Bankruptcy Code § 541 to define the scope of "property of the estate." *BLI*, 480 B.R. at 527. For this reason, the concepts of "property of the estate" and "property of the debtor" are the same, separated only by time. As the Supreme Court explained in *Begier*, § 541 "delineates the scope of 'property of the estate' and serves as the postpetition analog to § 547(b)'s 'property of the debtor.'" *Id.* (quoting *Begier,* 496 U.S. at 58–59) (internal quotation marks omitted); *accord French*, 440 F.3d at 151; *contra Maxwell I,* 186 B.R. at 820-21 (concluding that Congress did not clearly express its desire that Bankruptcy Code § 547 applies to foreign transfers of the debtor's property); *Midland*, 347 B.R. at 718 (concluding that Congress did not intend for § 548 to apply extraterritorially).

Section 550, in turn, allows the trustee to recover the avoided transfer from the initial transferee, the person for whose benefit the transfer was made or the subsequent transferee:

> [B]y incorporating the avoidance provisions by reference, Section 550 expresses the same congressional intent regarding extraterritorial application. Thus, Congress expressed intent for the application of Section 550 to fraudulently transferred assets located outside the United States and the presumption against extraterritoriality does not apply.

*BLI*, 480 B.R. at 528.

**2.    *Sec. Investor Prot. Corp. v. BLMIS* (*In re BLMIS*), 513 B.R. 222**

**(S.D.N.Y. 2014)**

Less than two years after the issuance of the *BLI* decision, District Judge Rakoff reached the opposite conclusion in the *Sec. Investor Prot. Corp. v. BLMIS* (*In re BLMIS*), 513 B.R. 222 (S.D.N.Y. 2014) ("*ET Decision*").[9]  The *ET Decision* concerned the recovery of subsequent transfers typically made by the BLMIS feeder funds to their own shareholders, managers and service providers.  The issue before the District Court was whether 11 U.S.C. § 550(a)(2), the provision that allows a trustee to recover an avoided initial transfer from a subsequent transferee, applied extraterritorially.  The District Court engaged in the *Morrison* two-step analysis, and disagreeing with the conclusion reached in *BLI*, initially ruled that the "focus" of the provision was the subsequent transfer.  *ET Decision*, 513 B.R. at 227.  The subsequent transfers at issue were predominantly made overseas by foreign transferors to foreign transferees, and consequently, the trustee was seeking to recover foreign transfers that required the extraterritorial application of § 550(a).  *Id.* at 228.

The District Court then turned to the question of whether Congress intended the extraterritorial application of section 550(a).  Here too, the *ET Decision* disagreed with *BLI*.  First, "[n]othing in [the language of section 550(a)] suggests that Congress intended for this section to apply to foreign transfers. . . ."  *Id.* at 228.  Judge Rakoff next looked to context and surrounding Bankruptcy Code provisions.  *Id.*  The trustee had argued that § 541's definition of "property of the estate," which included property held worldwide, indicated Congress' intent to allow the trustee to avoid transfers of "property

---

[9]      The motions to dismiss before Judge Rakoff were briefed before Judge Lifland issued the *BLI* decision, and the *ET Decision* did not mention it.

16

of the debtor" that, but for the fraudulent transfer, would have been "property of the estate" as of the commencement of the bankruptcy case.  *Id.* at 228-29.  Judge Rakoff rejected the trustee's argument for the same reason the District Court rejected a similar argument in *Maxwell I;* fraudulently transferred "property of the debtor" only becomes "property of the estate" *after* recovery, *ET Decision*, 513 B.R. at 229 (citing *Colonial*, 980 F.2d at 131), "so section 541 cannot supply any extraterritorial authority that the avoidance and recovery provisions lack on their own."  *Id.*; *accord Sherwood Inv. Overseas Ltd. v. Royal Bank of Scotland N.V.* (*In re Sherwood Inv. Overseas Ltd.*), No. 6:15-cv-1469-Orl-40, 2016 WL 5719450, at *11 (M.D. Fla. Sept. 30, 2016), *appeal docketed*, No. 16-16824 (11th Cir. Oct. 31, 2016); *Maxwell I,* 186 B.R. at 820; *Midland,* 347 B.R. at 718.[10]

### 3.   *Weisfelner v. Blavatnik,* (*In re Lyondell Chem. Co.*), 543 B.R. 127 (Bankr. S.D.N.Y. 2016)

In *Lyondell*, Bankruptcy Judge Gerber reached the same conclusion as Bankruptcy Judge Lifland, and ruled that Bankruptcy Code § 548 applied extraterritorially.  The case involved a liquidating trustee's action to avoid and recover pre-petition shareholder distributions as fraudulent transfers.  The Court found that the transfers were extraterritorial, *id.* at 148-50, but were not beyond the reach of the Bankruptcy Code's fraudulent transfer provisions.  After surveying the split in the case law, the Court concluded that the reasoning of *French* was more persuasive.  *Id.* at 153-54.  In addition to the *French* Court's analysis, Judge Gerber was influenced by

---

[10]   The District Court also rejected the trustee's argument that provisions of the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa *et seq.*, and policy concerns support extraterritorial application of section 550(a).  *ET Decision*, 513 B.R. at 230-31.

Professor Jay Westbrook's endorsement of *French*'s reasoning and his own analysis of §
541.  *Id.* at 154 (quoting Westbrook, 42 TEX. INT'L L.J. at 908 ("The [*French*] court
reasonably concluded that the combination of these two provisions [11 U.S.C. §§ 541 and
548] demonstrated Congress' intent to include the debtor's worldwide property in the
estate, and therefore, that they likely intended to include foreign property transferred
before bankruptcy within the reach of the bankruptcy avoidance power. . . .  [Section
541(a)] strongly suggests that Congress intended the reach of those powers to be co-
extensive with the broad, global embrace of its definition of estate property, although
the bankruptcy court in Midland disagreed.").  Judge Gerber respectfully disagreed with
the contrary rulings in *Maxwell I* and the *ET Decision*.  *Lyondell*, 543 B.R. at 153 n. 115.

## D.    The Rule of Law to be Applied

### 1.    Section 547 Does not Apply Extraterritorially

The Court agrees with the *ET Decision* and *Maxwell I* that the avoidance
provisions of the Bankruptcy Code, in this case 11 U.S.C. § 547(b), do not apply
extraterritorially.[11]  Property transferred to a third party prior to bankruptcy in payment
of an antecedent debt is neither property of the estate nor property of the debtor *at the
time the bankruptcy case is commenced*, the only two categories of property mentioned
in Bankruptcy Code § 541(a)(1).  Furthermore, the *Begier* Court's conclusion that
"property of the debtor" is best understood as property that would have become
"property of the estate" but for the transfer does not support the *French* and *BLI* courts'
interpretation of section 548.  The Supreme Court held that the trustee could not avoid

---

[11]    For purposes of the presumption against extraterritoriality, there is no distinction between
sections 547(b) and 548.  Both permit a trustee to "avoid any transfer of an interest of the debtor in
property."

18

prepetition transfers of tax trust funds because property held in trust is not "property of the estate" under Bankruptcy Code § 541(a) or "property of the debtor" for purposes of Bankruptcy Code § 547(b).  *Begier*, 496 U.S. at 59.  The Supreme Court read section 541(a) as a limitation on the trustee's avoiding powers, not as an expansion of those powers.

Finally, some provisions of the Bankruptcy Code and corresponding jurisdictional sections do contain clear statements that they apply extraterritorially.  As discussed, § 541(a)(1) states that "property of the estate" includes, *inter alia*, all of the debtor's legal and equitable interests in property as of the commencement of the case, "wherever located," and 28 U.S.C. § 1334(e)(1) grants the district court exclusive jurisdiction "of all the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate."[12]  In contrast, Bankruptcy Code § 547 does not contain a clear indication that it applies extraterritorially, or allows the trustee to avoid transfers "wherever located," or wherever they occurred.  "When a statute provides for some extraterritorial application, the presumption against extraterritoriality operates to limit that provision to its terms."  *Morrison*, 561 U.S. at 265; *accord RJR Nabisco*, 136 S. Ct. at 2102.

---

[12]    In addition, Courts have held that the automatic stay applies extraterritorially, although it does not include the phrase "wherever located," because the automatic stay protects the bankruptcy court's exclusive *in rem* jurisdiction over "property of the estate" from dismemberment by creditors.  *See Underwood v. Hilliard* (*In re Rimsat, Ltd.*), 98 F.3d 956, 961 (7th Cir. 1996) (Posner, C.J.); *Sec. Investor Prot. Corp. v. BLMIS* (*In re BLMIS*), 474 B.R. 76, 81-82 (S.D.N.Y. 2012).

### 2.    The "Focus" of Section 547

Having concluded that Bankruptcy Code § 547 does not apply extraterritorially, the Court turns to the second prong of the *Morrison* test.  Judge Lifland explained that the focus of the avoidance and recovery provisions is the initial transfer that depletes the property that would have become property of the estate.  *BLI*, 480 B.R. at 524; *accord* Edward R. Morrison, *Extraterritorial Avoidance Actions: Lessons From Madoff*, 9 BROOK. J. CORP. FIN. & COM. L. 268, 271 (Fall 2014) ("Morrison"); *but cf. ET Decision*, 513 B.R. at 227 (concluding that the focus of Bankruptcy Code § 550(a)(2) is the subsequent transfer rather than the initial transfer).  I agree.

The initial transfer is the transfer the trustee must avoid.  If he does, section 550(a) imposes liability on the initial transferee, a subsequent transferee of the initial transfer or the entity for whose benefit the initial transfer was made.  In the case of the initial and subsequent transferees, the trustee is essentially tracing property into the hands of the recipient – no different than a trustee under non-bankruptcy law.  *See* Morrison, 9 BROOK. J. CORP. FIN. & COM. L. at 272 ("Although the trustee is suing the feeder fund's foreign investors, the trustee is tracing the funds from their domestic source to their final resting place.").  If he is pursuing his remedy against the "entity for whose benefit" the initial transfer has been made, the initial transfer may be the only transfer.[13]  In either circumstance, the sole question should be whether the trustee can enforce that remedy consistent with the principles of personal jurisdiction.  While other

---

[13]    "The quintessential example of an entity for whose benefit a transfer is made is a guarantor." *Gowan v. Amaranth LLC* (*In re Dreier LLP*), 452 B.R. 451, 466 (Bankr. S.D.N.Y. 2011) (citation omitted). The transfer relieves the guarantor from liability on the principal debt, but the guarantor does not receive any property.

doctrines, such as international comity, may limit the reach of section 550(a), the presumption against extraterritoriality should not.

### 3.     The Transfer was not Domestic

Here, the undisputed evidence showed that the Transfer was not domestic.  The Transfer occurred in Israel between a U.S. transferor headquartered in Israel and an Israeli transferee accomplished entirely between accounts at the same Tel Aviv bank. Although the Trustee argues that Goldfarb's legal services had some U.S. connections – Ampal's Class A shares traded on the NASDAQ, and Goldfarb's services included legal work related to Ampal's SEC and NASDAQ filings, (Tr. 21:7-16; 27:7-10), and rendering opinions on Israeli law for inclusion in the annual report (Tr. 29:24-30:18) – most of these services were performed in Israel.[14]  In addition, "even where the claims touch and concern the territory of the United States, they must do so with sufficient force to displace the presumption against extraterritorial application." *Kiobel v. Royal Dutch Petroleum Co.*, 133 S. Ct. 1659, 1669 (2013).  In this case, they did not.

The focus of Bankruptcy Code § 547 is the initial transfer, and that transfer occurred in Israel.  The Transfer was not domestic, and hence, cannot be avoided. Furthermore, because the Transfer cannot be avoided, Goldfarb's claim is not subject to

---

[14]      Altit attended meetings in New York around the time of, and apparently in conjunction with, the commencement of the chapter 11 case.  (*See* Tr. 46:25-47:14.)  While this may render Altit and Goldfarb subject to specific personal jurisdiction, the tests for personal jurisdiction and extraterritoriality are not the same.  *Cf. Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60, 69 (2d Cir. 2012) ("Ewing's lack of contact with the United States may provide a basis for dismissing the case against him for lack of personal jurisdiction . . . but the transactional test announced in *Morrison* does not require that each defendant alleged to be involved in a fraudulent scheme engage in conduct in the United States.").  Given the *Morrison* Court's rejection of the "conduct and effects" tests, the few services rendered in New York do not overcome the presumption against extraterritoriality in light of the foreign nature of the Transfer.

21

disallowance under 11 U.S.C. § 502(d).  *Maxwell II*, 93 F.3d at 1054.

The Clerk of the Court is respectfully directed to enter judgment in favor of the

defendant dismissing the action.

Dated:    New York, New York
          January 9, 2017


                              /s/ *Stuart M. Bernstein*
                              STUART M. BERNSTEIN
                              United States Bankruptcy Judge